Good morning. Our first case this morning is 21669 Logan v. City of Chicago. Mr. Casper, are you ready? Yes, Your Honor. Ms. Tiscia, are you ready? Yes, Your Honor. You may proceed when you're ready, Mr. Casper. Good morning, Your Honors. Cass Thomas Casper on behalf of Plaintiff Appellant Chris Logan. May it please the Court. Your Honors, my client has been a career aviation security officer who has long, during the time period relevant to this case, had long sought to achieve the rank of sergeant. He was found pre-qualified for that rank as early as 2015 and was placed on the City of Chicago's pre-qualified candidate list for a promotion to sergeant in 2015. He remained on that list all the way up through 2017, where the events relevant to this case really ossified. This case ultimately is about Chris Logan's denial of that promotion to sergeant in March 2017 on the basis, the City's alleged basis, of him having more than seven days suspensions in the prior calendar year. It's that denial of promotion that is the adverse action that motivates this entire case, and it's that denial of the promotion in March 2017 that we believe forms one of the bases for the District Court's error in this case. Namely, the District Court found that the Whistleblower Act claim was barred by the one-year statute of limitations from the Illinois Tort Immunity Act. It is plaintiff's ultimate position here that the court misapplied that doctrine here because it ignored the continuing violation rule that is the quintessential, that this is a quintessential case for the continuing violation rule to apply. Mr. Casper, how is it a continuing violation as opposed to the consequences that grew from the alleged tortious act? The Illinois law is pretty clear on that, that if it's a consequence flowing from it, that doesn't qualify for a continuous violation. But here's the issue with that. Chris Logan has no control over when the City conducts promotions, and he has no knowledge of when the City is going to conduct promotions. That might be true, but that doesn't impact or change the analysis that the consequence of not getting the promotion is exactly that, that it is a consequence of the prior act. In my brief, I talk about the Spaulding v. City of Chicago case, which lays out very clearly that the continuing violation rule can apply where there is a continuous set of acts by the same actor that are of a similar nature. And the Spaulding case applied that rule to say that the one-year statute of limitations cannot apply where you've got repeated acts by the same actor and they're of a similar nature. And that's exactly what went on in this case with the multiple suspensions that were proceeding from Redding and May, again and again and again, that all added up to the denial of the promotion in March 2017. Now, in the reply brief, I pointed out something interesting, and I concede it's in the reply brief. I concede that. But in a way, the continuing violation in this case really looks like a form of equitable tolling. And that's another basis that should be applied in this particular case, because I go back to the fundamental premise. Why would Chris Logan file a lawsuit after September 2016 over a denial of a promotion that hasn't occurred, that he doesn't know will occur, and that he has no idea when will occur? It defies belief that he would run to court to file a lawsuit over a promotion that hasn't happened yet, and he has no idea when it's going to happen. But your equitable tolling argument really seems to be based on no notice. But the policy here, which he certainly had notice of, was crystal clear about the potential consequences of suspension. So I don't know how you could argue no notice and equitable tolling. Well, again, I just revert back to the Spaulding case, which I talked about in the brief, which does seem to suggest that the continuing violation rule can apply here, where it's from the same actor and the conduct is all… But that's a separate argument than your equitable tolling. I understood your equitable tolling to be grounded in a lack of notice, which is not what Spaulding talks about. And even if it did, again, on the facts here, the city's policy with respect to internal candidates' promotions was very clear that they couldn't be promoted if they had a certain number of days of suspension. But again, and that's where I come back to the point, even with that policy, and sure, we can see Logan may have had notice of the policy, he still doesn't know when the promotions are going to occur. He has no idea. But he was on a list that had a one-year time frame. It expired in 2017. So he knew if it was going to come up, it was going to be within that one-year period that the list was in effect. But respectfully, that's not quite true because the list had been extended several times. He was originally put on it in 2015, and the list is good for a year, but then that list kept getting extended. So he knows that it's been extended, but he still knows under that list that there is a time frame. But he doesn't know when the promotion's going to occur. Mr. Kasper, I want to go back to your discrimination claims. You've brought a claim for gender discrimination and for race discrimination. Our case law under gender discrimination is clear that if you're not in a protected class, that you would have to show that the city here discriminates against men or that there's something fishy going on. The city raised that in its brief, and I did not see any response to that in your reply. What evidence do you have here on your gender discrimination claim that the city discriminates against men or that there was something fishy going on here? Your Honor, I did not focus on this gender issue in this appeal because I don't think that discovery really bore that out. I focused on the race, the retaliation, and the whistleblowing issues as the crux of this appeal. So then maybe I misunderstood, Mr. Kasper. Are you not appealing the district court's ruling denying or granting the city's summary judgment on gender discrimination? I'm sorry I wasn't clear. I am not appealing. Okay. All right. Then I misunderstood. Sorry. The other thing I want to talk about, though, is the Title VII retaliation claim. Now, the district court found that there was no genuine issue of material fact as to whether or not Chris Logan engaged in protected reporting with respect to his, from our perspective, his sexual harassment report to Redding in 2016. I think that this was error because the court did not liberally construe the record in favor of plaintiff. There is a huge gap, a genuine issue of material fact, as to what occurred in that meeting between Chris Logan and Mr. Redding in 2016. But, Mr. Kasper, the district court, when you say that the district court, I think, didn't, well, the district court did consider what Logan said to Mr. Redding. I don't think, at least, is your argument that the district court got wrong what Logan said he told Redding, or is your argument that the district court didn't read it the same way that Logan did? Because I think the district court does consider what Logan said to Redding and said, I'm just going to assume this is true. And then the district court goes on to say, this doesn't come anywhere close to an objective belief of reporting sexual harassment. This is stay away from my girlfriend type stuff. This has nothing to do with harassment. But that's not what Logan testified to in his deposition. So to answer your question, I would say that I do believe the district court did not fully read Chris Logan's deposition. And it just took out one statement from that as a basis for its ruling. Logan testified in his deposition, it was more than just stay away from my girlfriend. It was, my girlfriend has told me that your advances are making him uncomfortable. Logan, that's in Logan's deposition. Which, by the way, she says that's not true. I mean, so I don't know what to do with that. But we have a credibility problem with her testimony. So in her deposition, she waffles. She says, oh, we were dating. Then she says, oh, we were just friends. She says, oh, we were not dating because I started dating someone else. And then she makes this curious statement about how she's trying to advance profession. Mr. Kasper, let's assume that's true. And even given the benefit of the doubt, let's assume there's an issue of fact about the subjective belief of your client. Given that there's no dispute that Ms. Diamond had a different employer, how do you get around the objective prong of retaliation? Specifically, how could it be objectively unreasonable or objectively reasonable given that there are different employers here? And Title VII applies if you have the same employer. I guess my response to that would be that Logan himself suffered the retaliation from the city of Chicago after he reported what he believed was sexual harassment to the city of Chicago. But that's different than the objectively reasonable prong. And you are into your rebuttal time. Do you want to save your time? I can keep going. I'd rather answer the court's questions now. Okay. How does that address the objective prong? Because for retaliation, there is a subjective and an objective prong. Well, I think that's where we go back to the credibility issues. I mean, we have three people that are involved in this. And Redding himself, like, we got to look at his testimony about this conversation with Logan, too. I mean, Redding is amazing. He denies that Logan made any statements about Diamond beyond just saying, oh, I guess you met my girlfriend. Redding says, oh, there was nothing else had in that conversation at all. But how could it be, and I'm sorry to interrupt, Mr. Kasper, but you're going back to the subjective prong. How could it be objectively reasonable for Logan to believe that there was retaliation here under Title VII given that they didn't have the same employer? See, I guess I just don't understand why that should matter. Because Title VII doesn't protect all harassment. You have to have the same employer, so they don't have the same employer here. I get that, but I guess the question I'm posing is, like, why should that make a difference? So let's do a hypothetical thing. Why is the objective reasonableness prong given that they had different employers? Because I'm looking at it from Logan works for the city of Chicago. Logan reported sexual harassment to the city of Chicago. Logan suffered the adverse actions from the city of Chicago. Now, I understand Diamond had a different employer, but we have a complete identity. He has to be able to establish there's an objective belief that he was opposing an unlawful practice. And Title VII would be unlawful if his supervisor was harassing another city employee. But he's complaining about his supervisor harassing someone who doesn't work for the city. How can that be objectively reasonable? Your Honor, I would like to submit that there's a good faith argument for interpreting this law a little more broadly than that. So if I have a supervisor who's harassing a customer who doesn't work for me, like viciously harassing them, and I report that to the company, then the company fires me. Are we saying I don't have any kind of retaliation claim for that? You only have a minute left. Do you want to save that for rebuttal? I would just submit it's an absurd outcome for us to continue to interpret the law that way. And with that, I would reserve any remaining time for rebuttal. Thank you. Thank you, Mr. Casper. Ms. Tischer? Your Honors, may it please the Court. Mr. Logan committed several very serious infractions in which he abandoned his post, misrepresented his time, and treated a member of the public discourteously. He received discipline for these serious infractions, which made him ineligible to receive a promotion under the City's internal hiring policy. The City's decision to deny him that promotion was plainly legitimate, and the District Court properly granted summary judgment to defendants. This morning, I will explain that Mr. Logan's Title VII claims fail on the merits. I will then explain that Mr. Logan's Illinois Whistleblower Act claim is time barred, and in any event also fails on the merits. Summary judgment was proper on Mr. Logan's Title VII claims because he failed to present any evidence, he failed to establish a prima facie case of either discrimination or retaliation, he failed to present any evidence to show that the City's reason for denying him the promotion was pretextual, and he failed to present any evidence of any discriminatory or retaliatory intent on the part of any of the defendants. Notably, Mr. Logan does not dispute that under the City's internal hiring policy, he was ineligible to receive the promotion, nor does he dispute that he committed the very serious infractions that led to his discipline. Instead, he argues that he was targeted for discipline unfairly, and that he was disciplined more harshly than similarly situated officers. But as we explain in our brief, Mr. Logan has presented no evidence to support either of these claims. In regard to Mr. Logan's Title VII retaliation claim, as we explain in our brief again, it is undisputed that the only alleged complaint that preceded the discipline in this case was the conversation that Mr. Logan had with Deputy Commissioner Redding regarding Ms. Diamond. And as we explain, and as the District Court also explained, even accepting Mr. Logan's view of the events that led up to that conversation, he simply did not have a subjective or an objective belief that he was opposing conduct that was unlawful under Title VII. And as Your Honors pointed out, Title VII requires an employer-employee relationship, and that was simply not present here as Ms. Diamond worked for the U.S. Customs and Border Patrol, Border Protection, I'm sorry, under the federal government, and Deputy Commissioner Redding worked for the Department of Aviation. And I would also like to respond briefly to Mr. Casper's comment that Title VII protects harassment committed by non-employees. And I would like to point to our brief. We do explain that, well, that is true that if a non-employee, such as a customer or an independent contractor, if a non-employee does harass an employee and that employee's employer fails to remedy that harassment, that could potentially implicate Title VII, but that was not the case here. There was no instance, for example, if Ms. Diamond had complained to her own employer about Deputy Commissioner Redding's harassment, that would be a different matter here, but that was simply not the case here. This was involved Deputy Commissioner Redding allegedly flirting with Ms. Diamond, and there was no employer-employee relationship to bring that conduct under Title VII. And even so, I would like to point out that even if this Court were to find that that particular conversation constituted reporting of protected Title VII, that was protected Title VII conduct, there's absolutely no evidence in the record of any causal connection between that conversation and the discipline in this case. And for those reasons, Mr. Logan's Title VII claims fail and summary judgment was proper. Ms. Tischer, what impact should the text message between May and Redding have in that analysis? Your Honor, that text message, I believe that occurred around April 2016, and that was indeed indicated that there had been some discussion, perhaps, between Deputy Commissioner Redding and May about Ms. Diamond, but there was no evidence in the record about any follow-up conversation regarding that text message, the contents of any conversation, so it was really unclear from that particular text message what had occurred, what had been conveyed to May, what he knew about Ms. Redding's, I'm sorry, Deputy Commissioner Redding's discussion about Ms. Diamond. Does that lack of clarity raise an issue of fact? Well, Your Honor, in this case, the lack of, well, this Court has explained that the lack of, the inability of a witness or a party to recall the details of a conversation, that sort of lack of clarity regarding the details of a conversation or the details of a particular event in a case is not sufficient to raise a genuine issue of material fact, and importantly, even if we were to find... But this wasn't an issue of failing to remember the details. The text is pretty clear on its face what they were talking about, so I don't think there was anything in the record about saying they couldn't remember the details or what happened next. The text itself makes clear they're talking about, in fact, he's kind of making fun of him for Logan calling him out. Your Honor, to the extent that that particular text shows knowledge on the part of Mr. May, of any alleged reporting of sexual harassment, again, the fact that there was sort of lack of any recollection about the details of that conversation really does go to, it doesn't create a genuine issue of material fact on that piece because there was no evidence, there was nothing in the record that there was any conversation that, that that conversation involved any detail of Mr. Logan reporting to Deputy Commissioner Redding that he was, that, you know, Redding was flirting with Ms. Dimon. So it was just unclear, there was no recollection of the contents of that conversation to demonstrate that Mr. May was even aware of any reporting. To the extent that that text message could be used to show some sort of a causal connection between the conversation and the discipline in this case, even if we were to say that that conversation showed some sort of, you know, animosity on the part of Deputy Commissioner Redding and Mr. Logan over this conversation, it is simply still too far attenuated in time from the discipline in this case. And, you know, this court has held that a period of several months between the reporting of a particular complaint and the discipline is far too long to support a suspicious, to support any type of suspicious, to raise an inference of suspicion, I'm sorry. And so in this case, even by the time, even in July 2016, at the time that Deputy Commissioner Redding and other defendants began looking into Mr. Logan's absences, that again was still a period of three months or so between this text message and looking into that, those infractions and then subsequently disciplining in September. So that was still far too long to support an inference of any retaliatory intent in this case. I have one simple question really, and that's with regard to continuing violations. Yes, Your Honor. Yes, there's a lot of things going on. And I know since then, a lot of other things have gone on. As I understand, I don't know what's before us and whether who's still employed, et cetera. But that was the only thing that I looked at is maybe something that is, if it's individual targeting somebody just routinely, as opposed to somebody that does make mistakes along the way and they keep tripping them up. So I guess my question is, is there something more to continuing violations than just various incidents that you recited in two periods of time? Well, Your Honor, if we look to, looking at this continuing violation theory, what's important is that if there was, there has to be repeated injurious conduct that sort of continues over a period of time. And indeed, as you're pointing out, there may have been some instances leading up until this discipline. But the important point is at the time that he was disciplined, that that was the final adverse employment decision from which damages did flow. So even if we were to consider anything preceding that as some sort of continuing violation, what we're looking at is the statute of limitations would begin to run at the time of that adverse employment action. And Your Honor, Mr. Casper did point out that, or argues that the decision to deny him the promotion was the adverse employment action in this case. But I would like to point out, as we do in our brief, that that was not a specific decision. That was not a decision that was made by any of the defendants in this case. And in fact, it wasn't even really a decision. The decision to, the denial of the promotion was really a ministerial act performed in the Human Resources Department that was done for every candidate on the pre-qualified candidate list. It really just involved looking up to see if they had any discipline in the preceding 12 months that would make them ineligible for that promotion, determining based on the records that he was ineligible. So there was no separate adverse decision that was made in March 2017 that would be considered sort of a separate adverse action, a separate discrete action that would trigger the statute of limitations from starting all over again. It was really, as Your Honors pointed out, it was an additional ill effect from the discipline that he received in September 2016. And I would also like to point out that, you know, even accepting Mr. Logan's view that he was unable to file his complaint until he was officially denied the promotion, that occurred in March 2017, a good six months before the statute of limitations period ran out, was giving him ample time to file his complaint within that period. So an argument that, you know, that it was simply unfair to enforce the statute of limitations against Mr. Logan in this case is simply without merit. At the time of the suspension, Mr. Logan was on notice of the city's hiring policy, and he was on notice that he would be ineligible to receive any promotion that may arise in the next year. And in addition, at that time, at the time of the suspension, he believed that the discipline was a result of retaliation based on that prior conversation with Mr., between Deputy Commissioner Redding and about Ms. Diamond. Indeed, in early October 2016 already, he had filed internal complaints with the city alleging that he had been retaliated against based on that conversation about Ms. Diamond. There was nothing preventing Mr. Logan from filing a complaint at that time based on that, his belief that he had been unfairly disciplined based on discrimination and retaliation. And for that reason, his Illinois Whistleblower Act claim is time barred. And as we also explain in our brief, his Whistleblower Act claim is also without merit for the same reason his Title VII retaliation claim fails on the merits. He simply failed to present any evidence that he was retaliated against, that he was disciplined in retaliation for reporting a violation of the law. And for that reason, his summary judgment was proper on Mr. Logan's Whistleblower Act claims. And if there are no further questions, Your Honor, we ask this court to affirm the judgment of the district court. Thank you, Ms. Tisha. Mr. Casper. Just briefly, to go back to Your Honor's colloquy about the employer issue for the Title VII retaliation claim, in my brief in Section 7A, I cite the Nishan v. Stratosphere and Day v. Culp cases, which the cited language here does suggest that harassment of non-employees can be a basis for liability. And also, in the Day case, an employee may engage in protected expression under the retaliation section, even if the challenge practice does not actually violate Title VII. So to answer Your Honor's question, that would be the legal basis for that argument, as well as what I stated before about an absurd result to interpret it otherwise. Thank you very much for your consideration. Thank you, Mr. Casper. Thanks to both counsel. The case will be taken under advisement.